IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Korell Battle, | ) C/A No. 2:12-1350-CMC-BHH |
| *also known as* Korell Robert Floyd Battle, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) **Report and Recommendation** |
| | ) |
| John Ozmint; Frederick Thompson; D. | ) |
| Bailey; McKither Bodison; Darryl King; | ) |
| NFN Gilmore; and John Doe, *Officer*, | ) |
| | ) |
| Defendants. | ) |

Plaintiff, Korell Battle, *also known as* Korell Robert Floyd Battle ("Plaintiff"), a state

prisoner proceeding pro se and in forma pauperis, brings this action pursuant to 42 U.S.C.

§ 1983, alleging violation of Plaintiff's Eighth Amendment rights through Defendants'

deliberate indifference to Plaintiff's safety by failing to protect him from other inmates,

failure to correctly enforce policies of the South Carolina Department of Corrections

("SCDC"), and overcrowding through improper double-celling of inmates. This matter is

before the Court on Defendants' Motion for Summary Judgment (ECF No. 35).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and

Local Rule 73.02(B)(2)(e) (D.S.C.), all pretrial matters in cases involving *pro se* litigants are

referred to a United States Magistrate Judge for consideration.

Plaintiff, who is currently incarcerated in SCDC's Perry Correctional Institution

("PCI") in Pelzer, South Carolina, filed his Complaint (ECF No. 1) and Motion for Leave to

Proceed in forma pauperis (ECF No. 2) on May 22, 2012. By Order dated June 19, 2012

(ECF No. 8), service of the Complaint was ordered to be made upon Defendants and

Plaintiff's Motion for Leave to Proceed in forma pauperis was granted.  Defendants filed their answer (ECF No. 14) on August 7, 2012.  On August 20, 2012, Plaintiff filed a Motion to Appoint Counsel (ECF No. 20), which was denied by Order dated August 21, 2012 (ECF No. 21).  On November 15, 2012, Plaintiff filed a Motion for Default Judgment (ECF No. 28), to which Defendants filed a Response (ECF No. 34), on November 29, 2012.  On March 11, 2013, the undersigned issued a Report and Recommendation ("Report," ECF No. 45) recommending that Plaintiff's Motion for Default Judgment be denied.  By Order dated April 2, 2013 (ECF No. 49), United States District Judge Cameron McGowan Currie adopted the Report, denied Plaintiff's Motion for Default Judgment, and returned this matter to the undersigned for further pretrial proceedings.

On December 20, 2012, Defendants filed their Motion for Summary Judgment (ECF No. 35).  By Order dated December 21, 2012 (ECF No. 36), pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to adequately respond to the Motion. Plaintiff filed his Response in Opposition to Defendants' Motion for Summary Judgment (ECF No. 38), on January 30, 2013.  Accordingly, this matter is before the undersigned for a Report and Recommendation on Defendants' Motion for Summary Judgment (ECF No.35).

**APPLICABLE LAW**

**Summary Judgment Motion Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a).  "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party."  The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'"  Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

The moving party has the burden of proving that judgment on the pleadings is appropriate.  Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991).  Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial.  Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992).  Further, while a federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists.  Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

In deciding a summary judgment motion, the court must look beyond the pleadings and determine whether there is a genuine need for trial.  Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether

it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-53 (1986). If the defendant carries its burden of showing there is an absence of evidence to support a claim, then the plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324-25 (1986). An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the plaintiff. Anderson, 477 U.S. at 248. An issue of fact concerns "material" facts only if establishment of the fact might affect the outcome of the lawsuit under governing substantive law. Id. A complete failure of proof concerning an essential element of the plaintiff's case necessarily renders all other facts immaterial. Celotex, 477 U.S. at 322-23. Moreover, a "mere scintilla of evidence" in support of an essential element will not forestall summary judgment. Anderson, 477 U.S. at 251.

## BACKGROUND AND EVIDENCE

Plaintiff's Complaint (ECF No. 1) alleges that he is a mentally healthy inmate who, in May 2009, while he was an inmate at SCDC's Lieber Correctional Institution ("LCI") in Ridgeville, South Carolina, was placed in the same cell with Jamie Faison, an inmate Plaintiff claims is violent and psychotic. Plaintiff alleges that Defendants' failure to properly classify inmates "may be unconstitutional in some circumstances." Complaint, ECF No. 1, p. 4. Plaintiff further alleges that correctional officers force inmates to be handcuffed while a dangerous cell mate is left unrestrained. Plaintiff alleges that correctional officers will not intervene to stop an attack except to spray mace into a cell.

Plaintiff alleges he was originally placed in a cell with inmate Dexter Crawford, who is incarcerated for two murders. Plaintiff alleges that Crawford hit him in the face, and was

4

moved to a different cell.  Crawford threatened "to get [the Plaintiff] back."  Complaint, ECF No. 1, p. 7.  Plaintiff states that he was then placed in the same cell with Faison.  Plaintiff alleges that Crawford and Faison are friends.  Plaintiff alleges that he feared for his life and did not want a cellmate, but was told he could not be housed in a cell by himself and cannot choose a cellmate.

Plaintiff alleges that he was in the same cell with Faison for a period of time.  During that time, Faison would talk about who he was going to kill.  Plaintiff alleges that he asked to be moved, but received no response.  Plaintiff alleges that Faison attacked him while Plaintiff was handcuffed, punching Plaintiff in the back of the head and on the side of the face.  He also "stomped" Plaintiff's head into the concrete floor and kicked him in the right rib cage.  Plaintiff further alleges that Faison told Plaintiff he was lucky, because Faison was about to stab Plaintiff and kill him, when correctional officers intervened.  Plaintiff alleges that Faison has a history of mental illness.  Plaintiff claims that Faison continues to threaten him, and knows how to "come out [of his] cuffs and get [him]."  Complaint, ECF No. 1, p. 7-10.

Plaintiff alleges that Defendants knew that Faison was a risk to other inmates because Faison had a particular custody classification ("STG" or security threat group).  Plaintiff maintains that, according to SCDC policy, an "STG" custody classification requires an inmate to be placed in a cell by himself.  Nonetheless, Plaintiff alleges, in violation of SCDC policy, Defendants placed Faison in a cell with the Plaintiff, knowing that Faison was dangerous.  Plaintiff also alleges that he overheard Crawford tell Faison "that if he got [Plaintiff one] more time then he'd be paid real good again...."  Thus, Plaintiff believes that Crawford "put a hit" on him.  Complaint, ECF No. 1, p.

5

Defendants have submitted the following attachments to their Motion (ECF No. 35): (1) affidavit of Denise Baily (ECF No. 35-2); (2) affidavit of Jill Beattie and SCDC incident report of 05-21-09 (ECF No. 35-3); (3) affidavit of Nadine Pridgen (part 1 and part 2) (ECF Nos. 35-4, 35-5); (4) exhibit of Plaintiff's SCDC incarcerated inmate search website record (ECF No. 35-6); (5) exhibit of inmate Jamie Lee Faison's SCDC incarcerated inmate search website record (ECF No. 35-7); (6) exhibit of Plaintiff's Step I and Step 2 grievances (ECF No. 35-8); (7) exhibit of SCDC Policy/Procedure OP-22-12 (ECF No. 35-9); (8) exhibit of SCDC incident report of 04-09-09 (ECF No. 35-10); (9) and (10) exhibits of cases, cited a legal authority: Wiles v. Ozmint, 2010 WL 5811355 (D.S.C. 2010), Meyer v. Miro, 2003 WL 23198856 (D.S.C. 2003). Plaintiff has submitted his "Brief in Opposition to Defendants' Summary Judgment Motion" (ECF No. 38) and his "Declaration in Opposition to Defendants' Motion for Summary Judgment" (ECF No. 38-1).[1]

Defendants allege, based on the affidavits filed, that, in April 2009, Plaintiff was serving a thirty (30) year sentence for armed robbery and was housed in LCI's Special Management Unit ("SMU"). LCI is a Level 3 institution, which is the highest security level within the SCDC. See SCDC website, Institutions, http://www.doc.sc.gov/institutions/institutions.jsp. (last visited July 29, 2013); Williams v. Long, 585 F. Supp. 2d 679, 685-89 (D. Md. 2008) (collecting cases in which courts have held that postings on government websites are inherently authentic or self-authenticating). Level 3 institutions are designed to primarily house violent offenders with longer sentences,

---

[1] In this Circuit, a verified complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

and inmates who exhibit behavioral problems.  Id.  Inmates at Level 3 facilities are closely supervised and their activities and movement within the institution are highly restricted.  Id. The SMU is used to house inmates who require more intense levels of supervision and monitoring in separated areas in order to maintain the safety and security of the general population and the staff.  SCDC Policy OP-22.12 Policy Statement, ECF No. 35-9.

Defendants' assert that, while Plaintiff's April 9, 2009 assault on his roommate Dexter Crawford ("Crawford") is not at issue in Plaintiff's Complaint, it is important to the Court to have the facts concerning the assault, as background for Plaintiff's claims in the instant case.  According to the Incident Report, on April 9, 2009, Plaintiff told Officer Swain that he needed to get Crawford out of his cell.  ECF No. 35-10.  Officer Swain told Plaintiff that he would have to wait, and Plaintiff turned and struck Crawford.  Id.  The two inmates began fighting.  Swain opened the flap in the door, sprayed his gas, which had little effect, and called for first responders.  Id.  Lieutenant King arrived and began to organize a force cell movement team.  Id.  Officer Swain continued to watch both inmates and they finally stopped fighting.  Id.  Plaintiff was charged with the disciplinary infraction of Striking an Inmate With or Without a Weapon.  Id.

Defendants' assert that, shortly after the April 9, 2009 assault, inmate Jamie Faison ("Faison") was moved into the cell with Plaintiff.  Faison was serving an eight (8) year sentence for threatening a public official.  Record of Jamie Faison at https://sword.doc.state.sc.us/scdc-public/, ECF No. 35-7.  In determining whether or not these two inmates could be housed together, certain criteria were reviewed.  Both Plaintiff and Faison were black males and approximately the same age, height and weight.  Affidavit of Denise Bailey, ECF No. 35-2.  Both inmates had an STG affiliation and were in the SMU

7

for threats, violence, and assaultive offenses towards other inmates and staff. Id. Therefore, Defendants contend, there was no reason these inmates should not have been housed in the same cell in LCI's SMU. Id.

On May 21, 2009, Officers Fuller and Dove escorted Faison to his cell from the recreation field. Affidavit of Jill Beattie, May 21, 2009 Incident Reports, ECF No. 35-3. Fuller handcuffed Plaintiff through the cell window, and the officers placed Faison in the cell. Id. The officers secured the door, then removed the handcuffs from Faison through the window. Id. Faison pulled Plaintiff's feet from underneath him and began hitting him. Id. Fuller gave Faison a direct order to stop but Faison did not comply. Id. Fuller and Dove called for first responders and engaged in the use of force. Id. Both officers sprayed their gas into the room. Id. Another officer arrived and was able to get Faison to comply and be handcuffed. Id. Faison was removed from the room. Id. Both inmates were seen by medical staff and stated they were okay. Id.

On August 7, 2009, Plaintiff filed a grievance concerning the incident with Jamie Faison. Inmate Grievance Form, Step 1, LCI 0877-09; ECF No. 35-8. The issue that Plaintiff raised in this grievance was his belief that staff was negligent because they failed to exercise reasonable and ordinary care to protect him from an inmate assault that Plaintiff says was foreseeable, because Faison had known dangerous propensities and was exceptionally assaultive. Id. Plaintiff's Step 1 grievance was denied. Id. Plaintiff filed a Step 2 grievance on November 16, 2009, which was also denied. Id. Defendants argue that the response to Plaintiff's grievance explained to Plaintiff that SCDC staff followed proper procedure and took the necessary action to control the incident. Id. It also explained that Plaintiff was not permitted to be housed in a single cell. Id. Finally, the

8

response stated that due to Plaintiff's failure to get along with his prior roommate, Crawford, staff had accommodated Plaintiff and removed Crawford from his cell. Id. Following the denial of his grievance, Plaintiff filed an appeal to the South Carolina Administrative Law Court, on or about January 18, 2010. Defendants contend that Plaintiff has not filed grievances relating to overcrowding, double celling, how the SCDC handcuffs inmates, and the SCDC's classification policy as it relates to inmate cell assignments. Id.

## DISCUSSION

Defendants have set forth six grounds for the dismissal of Plaintiff's case. Defendants assert that Plaintiff's claims are barred by the statute of limitations. The statute of limitations for this § 1983 action is three years. See Owens v. Okure, 488 U.S. 235, 239 (1989); Wilson v. Garcia, 471 U.S. 261, 276 (1985), superseded by statute on other grounds as stated in Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369 (2004); S.C. Code § 15-3-530(5). Defendants assert that Plaintiff's claims are related to incidents that he alleges occurred from April 9 or 10, 2009, when Faison moved into his cell, through May 21, 2009, but Plaintiff did not file his Complaint until May 22, 2012. Thus, Defendants argue, any alleged incidents prior to May 22, 2009 fall outside the applicable statute of limitations period and are barred in this action. Plaintiff argues that the three-year statute of limitations did not start to run until May 21, 2009, when Plaintiff was actually assaulted. Plaintiff further contends that, by operation of the mailbox rule in Houston v. Lack, 487 U.S. 266 (1988) (prisoner's pleading was filed at the moment of delivery to prison authorities for forwarding to District Court), Plaintiff timely filed this action, because he put his complaint in the mail on May 18, 2012, as evidenced by the PCI mailroom stamp on the envelope. See ECF No. 38, p. 10-11, ECF No. 1-2, p. 1. The undersigned finds that Plaintiff's claims

9

are not barred by the statute of limitations and Defendants' Motion for Summary Judgment should not be granted on this ground.

Defendants also assert that Plaintiff's Complaint should be dismissed because Plaintiff did not exhaust his administrative remedies, as required by 42 U.S.C. § 1997e(a), before filing this action pursuant to §1983 complaining of prison conditions. Defendants assert that Al-Shabazz v. State, 338 S.C. 354, 376, 527 S.E.2d 742, 749 (2000) outlines the procedure a state prisoner must follow to obtain a review of an SCDC decision in a non-collateral or administrative matter, i.e. where the inmate is not challenging the validity of a conviction or sentence. Defendants contend that administrative matters include disciplinary outcomes, calculation of sentence-related credits, custody status and other conditions of imprisonment and that, according to this procedure, the inmate must first file a grievance, which gives the inmate "a method to raise the matter to prison officials and create a reviewable record." Al-Shabazz, 527 S.E.2d at 753. Once the SCDC makes its final decision, the inmate has the right, in certain cases, to appeal to the State Administrative Law Court ("SC ALC")[2] and, thereafter, to the South Carolina Court of

_____

[2] It is well established in this District that a prisoner is not required to appeal the denial of his Step 2 grievance to the South Carolina Administrative Law Court, in order to exhaust his administrative remedies for purposes of a lawsuit asserting a condition of confinement claim, such as is being asserted here. See Johnson v. Ozmint, 567 F. Supp. 2d 806, 820, n.5 (D.S.C. 2008); Peoples v. King, No. 10-106, 2011WL 322360 (D.S.C. Jan. 4, 2011), adopted, 2011 WL 317461 at * 1 (D.S.C. Jan. 31, 2011); Duncan v. Langestein, No. 07-268, 2008 WL 153975 at * 5 (D.S.C. Jan. 14, 2008) (citing Charles v. Ozmint, No. 05-2187, 2006 WL 1341267 at * 4 n. 4 (D.S.C. May 15, 2006) (recognizing that completion of Step 2 grievance exhausts administrative remedies and that § 1997(a) does not require inmates to further appeal to Administrative Law Court.)); Ayre v. Currie, No. 05-3410, 2007 WL 3232177 at * 7 n.5 (D.S.C. Oct. 31, 2007).

Appeals, and the Supreme Court. Id. at 754; Slezak v. SCDC, 605 S.E.2d 506, 507 (2004).[3]

Defendants argue that Plaintiff failed to exhaust his administrative remedies with respect to his allegations concerning the following issues: SCDC officials' alleged failure to act on his warnings, overcrowding, double celling, SCDC policy on handcuffing inmates, and SCDC's classification policy as it relates to inmate cell assignments. Motion, ECF No. 35-1, p. 14-15. Defendants argue that these claims concern conditions of imprisonment, but Plaintiff did not file a grievance concerning any of these issues. Therefore, according to Defendants, Plaintiff did not exhaust his administrative remedies as to these issues, and the Complaint should be dismissed, insofar as it raises these issues. Id. Plaintiff asserts that he properly exhausted these issues, pointing out that he discussed them in his Step 1 and Step 2 grievances, and the response to his Step 2 grievance acknowledges these issues. Opposition, ECF No. 38, p. 37-38. The denial of Plaintiff's Step 2 grievance states:

> Your concern has been reviewed. The Security Staff followed proper procedures and took the necessary action to ensure control of the incident. You do not have the right to determine if you want a cell mate or not. Due to limited staff double celling is necessary. Due to your inability to get along with your previous cell mate the security staff accommodated you by removing him from your cell; however, you were not permitted to be housed in a single cell. You have not provided any evidence and none has been found of a policy violation.

---

[3] If, however, a prisoner wishes to attack a conviction or sentence imposed by a prison disciplinary official, he or she must exhaust both steps of the prison grievance process and also appeal the Step 2 decision to the state ALJ Division before his remedies may be said to be exhausted. See SCDC Inmate Grievance System Procedures Issued 1-1-2006, Numbers 13.7-13.9 (requiring the inmate to appeal the result of a disciplinary hearing to the South Carolina Administrative Law Court); Furtick v. South Carolina Dep't of Corr., 649 S.E.2d 35 (S.C. 2007); see also Dicks v. South Carolina Dep't of Corr., No. 9:06-cv-663-HFF-GCK, 2006 WL 1207851 at *3 (D.S.C. 2006). Cf. Braden v. 30th Judicial Circuit Ct., 410 U.S. 484, 490-91 (1973).

Motion, ECF No. 35-8. The undersigned finds that these issues were addressed during Plaintiff's exhaustion of his administrative remedies. Moreover, although it was not necessary in this instance, because Plaintiff is not challenging a disciplinary conviction, Plaintiff additionally appealed the denial of his Step 2 grievance to the SCALC, see Opposition, ECF No. 38-2, p. 13-18, and attempted to appeal the SCALC's dismissal of his appeal to the South Carolina Court of Appeals. The undersigned finds that Plaintiff did not fail to exhaust his administrative remedies and Defendants' Motion for Summary Judgment should not be granted on this ground.

Defendants' primary contention and the central ground of their Motion for Summary Judgment is that, as a matter of law, Plaintiff's Complaint fails to allege sufficient facts to establish that Plaintiff was subjected to cruel and unusual punishment in violation of his Eighth Amendment rights. Motion, ECF No. 35-1, p. 7-14.

The Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." Farmer, 511 U.S. at 834. As the Fourth Circuit recently stated in Bacchus v. Scarborough:

> To establish a claim for failure to protect, an inmate must show: (1) "serious or significant physical or emotional injury," and (2) that prison officials exhibited deliberate indifference to inmate health or safety. De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) (internal quotation marks omitted). To be deliberately indifferent, a prison official must "know of and disregard an objectively serious ... risk of harm." Id. A showing of mere negligence does not qualify as deliberate indifference. Davidson v. Cannon, 474 U.S. 344, 347 (1986); Grayson v. Peed, 195 F.3d 692, 695 (4th Cir.1999).

466 F. App'x 269, 271 (4th Cir. 2012).

12

Unless a prison official actually makes the inference that a substantial risk of serious harm exists, "he does not act with deliberate indifference, even where his actions violate prison regulations or can be described as stupid or lazy." <u>Drayton v. Cohen</u>, C.A. No. 2:10-3171-TMC, 2012 U.S. Dist. LEXIS 26108, 2012 WL 666839, at *6 (D.S.C. Feb. 29, 2012) (citing <u>Rich v. Bruce</u>, 129 F.3d 336, 339-40 (4th Cir. 1997)).  Plaintiff contends that, by double celling him with Faison, who Plaintiff claims was an "assaultive, psychotic, aggressive mentally ill inmate," Complaint, ECF No. 1, p. 4, Defendants created an unreasonable risk of harm that constituted deliberate indifference. <u>Id</u>.  With regard to an Eighth Amendment claim, "[a] defendant acts with deliberate indifference only if he 'knows of and disregards' an excessive risk to inmate health or safety." <u>Wiles v. Ozmint</u>, 2010 WL 5811355 at *8 (D.S.C. Aug. 27, 2010), citing <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994). The negligent failure of a prison official to protect an inmate from attack by another inmate does not rise to the level of an Eighth Amendment violation. <u>See</u> <u>Pressly v. Hutto</u>, 816 F.2d 977, 979 (4th Cir. 1987) citing <u>Davidson v. Cannon</u>, 474 U.S. 344 (1986).

Plaintiff's Complaint and Opposition allege that Defendants hold positions of administrative authority within SCDC and LCI, and Plaintiff makes conclusory allegations that Defendants, based on their positions, are legally responsible for the allegedly unlawful conditions and unconstitutional policies at LCI, which pose an unreasonable risk of harm to Plaintiff, such as classification, double celling, and handcuffing.  Defendants' correctly point out that, to the extent Plaintiff seeks to hold Defendants liable in their supervisory capacities, the doctrine of respondeat superior generally is inapplicable to § 1983 suits.[4]

_____

[4] As an adjunct to this argument, Defendants also assert, in overly broad terms, that they are not "persons" as defined under § 1983 and not subject to this lawsuit,

13

Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); Vinnedge v. Gibbs, 550 F.2d 926, 928-29 (4th Cir. 1977). "Because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948 (2009). As the Iqbal Court observed, because masters do not answer for the torts of their servants in § 1983 cases, "the term 'supervisory liability' is a misnomer." Id. at 1949. Indeed, the dissent in Iqbal opined that "[l]est there be any mistake, in these words the majority is not narrowing the scope of supervisory liability; it is eliminating [] supervisory liability entirely." Id. at 1957 (Souter, J., dissenting). Even if the majority in Iqbal did not entirely dispense with the concept of liability of a supervisor in a § 1983 case, Plaintiff fails show that there is a genuine dispute as to a material fact, which is sufficient to state a plausible claim under such a theory, based on Fourth Circuit precedent. See Carter v. Morris, 164 F.3d 215, 221 (4th Cir. 1999); Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (outlining the requirements to hold a supervisor liable for constitutional injuries inflicted by their subordinates).

---

citing Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989); Monell v. Dept. of Social Servs., 436 U.S. 658, 690 (1978). To the extent that Defendants argue that Plaintiff's claims for monetary damages against them in their official capacities, are barred by Eleventh Amendment immunity and by Defendants' lack of "personhood," as state officials, under § 1983, the undersigned agrees with this assertion. However, Plaintiff argues that he explicitly alleges in his Complaint that "each defendant is sued in their individual capacity for money damages." Opposition, ECF No. 38, p. 12. The undersigned agrees with this assertion, as well. Therefore, only to the extent that Defendants are sued in their official capacities are Plaintiff's claims for monetary damages barred. The issue is mooted, in any event, by the recommendation that Defendants' Motion for Summary Judgment be granted on other grounds, and that Plaintiff's Complaint against Defendants, in their official and individual capacities, be dismissed.

Plaintiff's contention is that the Eighth Amendment's prohibition against "cruel and unusual punishment," which imposes affirmative duties on prison officials to 'take reasonable measures to guarantee the safety of the inmates,'" Farmer v. Brennan, 511 U.S. 825 (1994), translates into a right not to be double celled, a right not to be subjected to overcrowded conditions, and a right to be classified and housed separately from mentally ill inmates. ECF No. 33, p. 31. Plaintiff cites to a Third Circuit case, Ryan v. Burlington County, 880 F.2d 1286 (3rd Cir. 1989), but Plaintiff fails to acknowledge that Ryan is based on precedent from a federal district court case in New Jersey. The Ryan case in New Jersey recognized that pretrial detainees possessed the right to be free from overcrowded conditions, based on Bell v. Wolfish, 441 U.S. 520 (1979), to be classified and housed separately from known dangerous convicted inmates, based on Ryan v. Burlington County, 674 F.Supp. 464 (D.N.J. 1987) (Ryan I), and to be housed in a "reasonably safe prison environment," based on Youngberg v. Romeo, 457 U.S. 307 (1982). However, this authority is relevant to *pretrial detainees*, not convicted inmates. These cases are not controlling in the Fourth Circuit and the District of South Carolina, and they pre-date more recent United States Supreme Court authority, such as Turner v. Safley, 482 U.S. 78 (1987), and Sandin v. Conner, 515 U.S. 472, 484 (1995).[5]

Plaintiff has not presented any evidence that Faison posed a serious risk of violence to him. By Plaintiff's own admission, Faison was moved into the cell with him two days

---

[5] In an unpublished decision, the Fourth Circuit has recognized that a prisoner's complaint alleging that severe overcrowding was causing unsanitary conditions, the spread of disease, an increased risk of violence, and lack of access to medical care, among other effects can state an Eighth Amendment claim. See Webb v. Deboo, 423 Fed. App'x 299 (4th Cir. 2011).

after Crawford was moved out of the cell, because Plaintiff deliberately got into a fight with Crawford, in order to have him moved, immediately.  Complaint, ECF No. 1, p. 7.  Plaintiff alleges that he told an unidentified officer, Defendant John Doe, that he feared for his life and did not want anymore roommates.  Id.  However, Plaintiff had not been housed with Faison, prior to that date, and has provided no reason other than speculation about Faison and Crawford being from Florence and having been in the Florence jail together prior to coming to SCDC, that he had to be concerned about Faison.[6]  The unidentified officer correctly explained to Plaintiff that he had no right to determine who his roommate was and he was not entitled to his own cell.  Id.

Plaintiff alleges contradictory information in his Complaint, grievance documents, the memorandums he allegedly submitted to staff at LCI, and his Opposition to the Motion.  By Plaintiff's own admission, he was housed in the cell with Faison for over a month with no incidents.  He states that Faison talked about hurting other people, but Plaintiff asserts that they never once argued or cursed at each other.  Inmate Grievance Form, Step 1, LCI 0877-09.  Plaintiff alleges that he simply got a "bad vibe" from Faison, and there was tension between them, and this is what Plaintiff allegedly reported to Defendants Bodison,

---

[6]  See House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) (Plaintiff's conclusory allegations insufficient to maintain claim); Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) ("Even though pro se litigants are held to less stringent pleading standards than attorneys, the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"); see also Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995) (Explaining that while the party opposing summary judgment is entitled to the benefit of inferences that can be drawn from the evidence, "[p]ermissible inferences must still be within the range of probability" and that "[w]hether an inference is reasonable cannot be decided in a vacuum; it must be considered in light of the competing inferences to the contrary" (internal quotation marks omitted)].

Thompson, and King, in separate notes, before the incident occurred.  Id.  Subsequent to the assault, Plaintiff claimed that he believed Faison was making a shank, but he never saw it.  In fact, the incident reports concerning the May 21, 2009 incident, show that both Plaintiff and Faison were charged with the disciplinary offense of possession of contraband because LCI staff could not determine who the shank belonged to, after it was found in the common area outside the cell, near Faison's property.  See Incident Report, ECF No. 35-3, p. 3.  Plaintiff stated in his grievance filed August 7, 2009, that he knew Faison was making a shank, but  did not tell anyone because Plaintiff did not want to be labeled a snitch.

Defendants assert that, none of Plaintiff claims paint Faison as being any more of an assaultive, psychotic, aggressive inmate than Plaintiff, based on Plaintiff's admitted disciplinary history of assaults.  See Opposition, ECF No. 38-2, p. 6.  Plaintiff alleges that he "is not the only one [Faison] snuck while cuffed behind my back.  He's snuck others at Broad River prison (Mike Jones) and another inmate at Lieber and others.  This is part of his "MO."  He doesn't care if staff is around.  Opposition, ECF No. 38, p. 21.  Plaintiff alleges that Faison told him that he uses the element of surprise to lure victims into inattention.  Id.  Yet, Plaintiff admits that Faison never threatened Plaintiff or argued with him, but states that the reason was because Plaintiff was Faison's prey.  Id.  Plaintiff asserts that he overheard Faison and Crawford talking, after the May 21, 2009 incident, and Crawford said "if he get me I more time then he'd be paid real good again," and Plaintiff could see them laughing and talking together from his cell.  However, this alleged fact has no bearing on Defendants' knowledge of any risk posed to Plaintiff by Faison, before the May 21, 2009 incident.  Plaintiff alleges that he thinks Faison and Crawford are friends because both are from Florence and were in the Florence jail together.  However, because

17

"a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" Iqbal, 129 S. Ct. at 1949 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)), such unsubstantiated speculation does not amount to a plausible factual allegation.  A plaintiff must demonstrate more than "a sheer possibility that a defendant has acted unlawfully."  Id.  The plausibility standard requires the plaintiff to articulate facts that, when accepted as true, "show" that the plaintiff has stated a claim entitling him to relief.  Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 129 S. Ct. at 1949; Twombly, 550 U.S. at 557).  Defendants point out that the story that Plaintiff claims he was told by Faison about why he was in prison, is not substantiated by Faison's official SCDC record, ECF No. 35-7, which shows that Faison had a much shorter sentence for a less serious crime that Plaintiff.  See ECF No. 35-6.  It is undisputed that Plaintiff and Faison were approximately the same height, weight and age.  Affidavit of Denise Bailey, ECF No. 35-2.  Both inmates had STG affiliations, not just Faison, as Plaintiff alleges, and both were in the SMU because they were violent and had threatened or assaulted staff or other inmates.  Id.

The memorandums Plaintiff alleges he wrote to staff state that he feared for his life, but provide no support for such a statement.  As with his grievance documents, Plaintiff stated that he and Faison had not argued, threatened each other, or fought.  Plaintiff's claims were all based on his "bad vibe."  Further, these memorandums were not prepared on SCDC Request to Staff Forms, and there is no proof that they were ever forwarded to staff or received by staff.  Plaintiff also alleges that his fear of Faison was based on the fight he got into with his prior roommate, Crawford, and his belief that Crawford put a hit out on

18

him.  However, Plaintiff offers no evidence of such a threat, other than his own speculation as to comments he heard, and his belief that Crawford and Faison were friends.

Defendants argue that Plaintiff has failed to show that Defendants acted with deliberate indifference in this instance. The undersigned agrees. As detailed above, there is no evidence that Faison posed a serious risk of violence to Plaintiff. See Drayton v. Cohen, No. 2:10-3171-TMC, 2012 WL 666839 (D.S.C. Feb. 29, 2012), affirmed 474 Fed. App'x 991 (4th Cir. Aug. 6, 2012). As courts have pointed out, prisoners are to be accorded only those rights which are "not fundamentally inconsistent with imprisonment itself or incompatible with the objectives of incarceration." Meyer v. Miro, 2003 WL 23198856 at *10 (D.S.C. Dec. 12, 2003).  The federal courts are to act to protect against violations of fundamental constitutional rights, but typically do not interfere in the ordinary administration of state prisons.  Id.  Prisoners do not have a constitutionally recognized liberty interest in a particular security status or prison placement.  Hewitt v. Helms, 459 U.S. 460, 468 (1983); Meachum v. Fano, 427 U.S. 215, 224 (1976).  Likewise, there is no constitutional right for a state prisoner to be housed in a particular institution, at a particular custody level or in a particular portion or unit of a correctional institution. See Olim v. Wakinekona, 461 U.S. 238, 245-46 (1983); Ange v. Paderick, 521 F.2d 1066 (4th Cir. 1975).  Thus, the placement and assignment of inmates to particular institutions or units by state prison officials are discretionary functions and are not subject to review, unless state or federal law places limitations on official discretion.  Hayes v. Thompson, 726 F.2d 1015 (4th Cir. 1984).

Plaintiff asserts that Defendants were deliberately indifferent for double celling inmates, for failing to enforce the classification policy, for overcrowded conditions, and for

19

the handcuffing policy.  Opposition, ECF No. 38, p. 23.  However, Plaintiff has provided no information to demonstrate why he believes that LCI, or LCI's SMU unit, were overcrowded.  Plaintiff was told that he was not entitled to a single cell, and prison officials have the right to make that determination.  Plaintiff also has not shown that the classification or handcuffing policies were applied improperly in LCI.  Even if Plaintiff could show some policy violation, allegations that Defendants have not followed their own policies or procedures, standing alone, do not amount to constitutional violations.  Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir.1990).  See also Keeler v. Pea, 782 F.Supp. 42, 44 (D.S.C. 1992) (violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983); Scott v. Hamidullah, No. 05-3027, 2007 WL 904803 *5 n.6 (D.S.C. Mar. 21, 2007) (citing Riccio).

Although prisoners are afforded some due process rights while incarcerated, those liberty interests are limited to "the freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 484 (1995).  Routine handcuffing for the security of correctional officers and the inmates, while inmates are being taken in and out of cells, and to and from recreational, cafeteria, or visiting areas, is not unexpected, atypical, or a significant hardship.  Claims to the contrary are without merit in the carefully circumscribed atmosphere of a heavily populated prison or detention center, in which numerous inmates or detainees with a broad range of convictions or pending criminal charges are housed in close quarters.  See, e.g., Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir.1995) (prison officials have legitimate

penological interests in administrative segregation, and they must be given "wide-ranging deference" with respect to their need to maintain order, discipline, and "institutional security"), reh'g denied, 75 F.3d 448 (9th Cir. 1995), cert. denied County of Kern v. Anderson, 516 U.S. 916 (1995).

As Defendants accurately state, the cornerstone of an Eighth Amendment claim is evidence showing a serious or significant physical or emotional injury.  Plaintiff contends that he has adequately alleged actual physical injury, and has suffered physical pain, psychological damage, emotional distress, and anxiety.  Opposition, ECF No. 38, p. 39. Moreover, Plaintiff asserts that he can get punitive damages without proving an actual injury.  Id.  However, according to Plaintiff's medical records, Plaintiff did not sustain any significant injury as a result of his fight with Faison on May 21, 2009.  Affidavit of Nadine Pridgen; Medical Records.  Plaintiff alleges that he was kicked in the head three times and kicked in his side, Complaint, ECF No. 1, p. 9, resulting in a bump on his head, a nose bleed and the right side of his face was swollen.  Id.  Plaintiff's medical records and the Incident Reports show he was seen in his cell on May 21, 2009, shortly after the incident. Affidavit of Nadine Pridgen; Medical Records; Affidavit of Jill Beattie; May 21, 2009, Incident Reports, ECF Nos. 35-3, 35-4, 35-5.  The records also do not reflect any information about the injuries Plaintiff claims he sustained.  Id.  The records document that Plaintiff said he was okay and refused further medical evaluation or treatment.  Id. Therefore, Battle cannot establish that he sustained any "serious or significant physical or emotional injury" sufficient to support an Eighth Amendment claim.  See Williams v. Griffin, 952 F.2d 820, 824 (4th Cir.1991)).

Based on the foregoing, the undersigned finds that Defendants' Motion for Summary Judgment should granted, because no genuine evidentiary issue exists that would allow a reasonable jury to return a verdict for Plaintiff.

Having found that Plaintiff has not raised a viable § 1983 claim, the Court need not determine whether any rights that Plaintiff has asserted were "clearly established" for purposes of qualified immunity.  See DiMeglio v. Haines, 45 F.3d 790, 799 (4th Cir.1995) ("In many cases where a defendant has asserted qualified immunity, dismissal or even an award of summary judgment may be obviously warranted, based upon existing law, without the court ever ruling on the qualified immunity question."); Gordon v. Kidd, 971 F.2d 1087, 1093 (4th Cir.1992) ("In analyzing the appeal of a denial of summary judgment on qualified immunity grounds, it is necessary first to identify the specific constitutional right allegedly violated, then to inquire whether at the time of the alleged violation it was clearly established.").[7]

---

[7]  Defendants also assert, as a ground for summary judgment, that Plaintiff failed to identify the unknown Defendant, designated as John Doe, and failed to serve this Defendant with the summons and Complaint.  Motion, ECF No. 35-1, p. 4-5.  Plaintiff argues that Defendants have a log book, showing which officers were on duty on May 21, 2009, but have refused to provide this information to Plaintiff, despite his requests for its discovery.  Opposition, ECF No. 38, p. 8-9.  Under FRCP Rule 4(m), "If a defendant is not served within 120 days after the complaint is filed, the court- on motion or on its own after notice to the plaintiff - must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  By Docket Text Order dated March 8, 2013 (ECF No. 41), Plaintiff was granted an extension of time, until April 22, 2013, in which to provide sufficient identifying information and proposed service documents (summons and Form USM-285) to enable the United States Marshal's Service to serve Plaintiff's Complaint upon Defendant John Doe.  However, Plaintiff has failed to identify the Defendant and failed to provide service documents for him.  Accordingly, the undersigned agrees that Defendant John Doe would be subject to summary dismissal, without prejudice, under the circumstances. However, this issue, like the issue of Defendants' qualified immunity, is made moot by the recommendation to grant Defendants' summary judgment motion and to dismiss the

## CONCLUSION

Wherefore, it is RECOMMENDED that Defendants' Motion for Summary Judgment (ECF No. 35) be GRANTED.

IT IS SO RECOMMENDED.


July 30, 2013                                     s/Bruce H. Hendricks
Charleston, South Carolina              United States Magistrate Judge


**The parties' attention is directed to the important notice on the next page.**

---

entire case on other grounds.  Defendants argue, in addition, that Plaintiff's Complaint should be dismissed pursuant to 28 U.S.C. §1915(e), as frivolous, and that the dismissal should count as a strike, pursuant to §1915(g).  The undersigned does not find this to be appropriate in this case.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).